IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LAWRENCE BRANDYBURG, | * |
| | * |
| Plaintiff, | * |
| | * |
| vs. | *   Civil Action No: 23-192 |
| | * |
| BISHOP STATE COMMUNITY | * |
| COLLEGE, and | * |
| JIMMY BAKER, in his individual and | * |
| official capacity as Chancellor of the | * |
| Alabama Community College System. | * |
| | * |
| Defendants. | * |

**COMPLAINT**

**I.   INTRODUCTION**

1. This is an action for legal and equitable relief to redress retaliation against Plaintiff for his complaints of race discrimination. The first claim arises under the "opposition clause" of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended by the Civil Rights Act of 1991 (hereinafter "Title VII"), and seeks injunctive relief, equitable relief, lost wages, compensatory damages, attorneys' fees, and costs. Plaintiff also brings a second claim solely against Defendant Jimmy Baker, in his official capacity as Chancellor of the Alabama Community College System, under 42 U.S.C. § 1981 through § 1983, and, under this claim, requests only prospective injunctive relief, attorneys' fees (pursuant to 42 U.S.C. § 1988), litigation expenses, and costs.

**II.   JURISDICTION AND VENUE**

2. The jurisdiction of this Court in invoked pursuant to 28 U.S.C. §§ 1331, 1343, and 2201.

3. As a substantial part of the acts or omissions made the basis of this suit occurred in

Mobile County, Alabama, and in this judicial district, venue is proper in this Court under 28 U.S.C. 1391.

4. Plaintiff has fulfilled all conditions precedent to the institution of this action including timely filing a charge of discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC") within 180 days of occurrence of the last discriminatory act. Plaintiff files this lawsuit within ninety (90) days of receiving his Determination and Notice of Rights (commonly Right-to-Sue letter) which is an attachment to this Complaint.

### III. PARTIES

5. Plaintiff, Lawrence Brandyburg (hereinafter "Brandyburg") is an African-American (Black) male who, at all times pertinent to the facts underlying this lawsuit, was a resident of the State of Alabama and is over the age of 19 years.

6. Defendant Bishop State Community College (hereinafter "BSCC") is a state agency.

7. Defendant Chancellor Jimmy Baker (hereinafter "Baker"), a white Caucasian male, in his official capacity, is the chief executive of the State of Alabama community college system.

8. Defendants may be served through their attorney, Windy Bitzer, member of Hand, Arendall, Harrison, Sale, Attorneys at Law, 104 Saint Francis Street, Suite 300, Mobile, Alabama, 36602, 251-432-5511, wbitzer@handfirm.com, who has been informed and agreed to receipt of a Waiver of the Service of Summons.

### IV. FACTUAL ALLEGATIONS

9. Brandyburg began his employment with BSCC on June 6, 2021, as Executive Vice President. He reported to Reginald Sykes, who at that time was the President of BSCC. Sykes retired shortly thereafter and Brandyburg was named Interim President in July 2021.

10. During his employment Brandyburg received no criticism of his work performance. In fact, some ten (10) months into his employment, at a meeting in early Spring 2022 – on or about March 28, 2022, Brandyburg was apparently doing so well that he was told by Baker that he was looking forward to Brandyburg continuing at BSCC as the actual, not interim, President of the school.

11. Also, at this same Spring meeting, Baker told Brandyburg that he wanted Frazier Payne (hereinafter "Payne") promoted. Payne, a white Caucasian male, was the Special Assistant to the President at that time. Payne's previous position was as Special Assistant to Chancellor Baker. Given his compliment regarding Brandyburg ascending to the President job, Baker's clear objective was to replace Brandyburg with Payne as the Executive Vice President. Baker did not merely suggest that Payne would be his preference, he advised Brandyburg that he wanted Brandyburg, as President, to select Payne for the position. Brandyburg was taken aback but voiced no agreement or objection at that moment.

12. Brandyburg had a number of objections to Payne's promotion including a procedural concern that Payne was obligated to apply for the position through a competitive hiring/promotional process and could not, under normal circumstances, simply be appointed. However, Brandyburg's overriding concern was that Payne was simply unqualified for the job. Brandyburg had worked with Payne while he was Interim President and Payne was Special Assistant to the President. Brandyburg did not feel that Payne was qualified by experience or by education but also, having viewed the quality and quantity of Payne's work over the course of approximately ten months, did not believe Payne was up to the successfully performing the day-to-day functions of the job nor accomplishing long-term objectives associated with the position of Executive Vice President. Too, Brandyburg felt

that Baker also knew these limitations of Payne but would bestow the promotion as a perk for Payne because Payne was white like Baker and because of Payne's loyalty and friendship – not because Payne was objectively qualified.

13.     Brandyburg reminded Baker that BSCC was an accredited member of Historically Black Colleges and Universities (HBCU) and to put an unqualified white applicant into such a high level position was and would be considered discriminatory. Brandyburg advised Baker that if Payne would need to be successful in the promotional process, which he felt was very unlikely, for him to even consider Payne. However, it was clear that Baker had no desire to take the correct, legal route. Baker was conspicuously displeased by Brandyburg's resistance to his desire to promote Payne but did not dispute his reasoning that Payne was objectively not qualified. Baker told Brandyburg directly of his displeasure.

14.     Within days of the foregoing discussions regarding Payne, Brandyburg was notified that he and his team were to report to Montgomery and make a formal presentation to Baker, among other high-level executives in the Alabama Community College System, outlining his strategic plan for BSCC. Developing such a presentation is short order was a daunting task. It was at this point that Brandyburg felt that he had incurred more than Baker's displeasure in his rejection of Payne. While that feeling continued until his termination, at no time did Baker, or anyone else, tell Brandyburg that the presentation, his performance during the presentation, his overall performance during any part of his employment with BSCC, or any other aspect of his leadership was inadequate in any way.

15.     Brandyburg had formally applied for the President position and was readying his application package until June 3, 2022. On that date he was contacted by Baker who informed him

he was terminated effective July 5, 2022.

16. During the EEOC investigation, for the first time, Defendant BSCC alleged that it was Brandyburg's performance that resulted in his termination but admits that that decision was made on the heels of the presentation which occurred mere days after Brandyburg's rejection of Baker's scheme to promote Payne. The reason given by Defendant for Brandyburg's termination are pretext for retaliation for his protected activity.

V. CAUSES OF ACTION

A. TITLE VII

17. Plaintiff re-alleges and repleads the above and incorporates by reference paragraphs 1 through 16 above with the same force and effect as if fully set out in specific detail herein below.

18. Plaintiff brings this action against Defendant BSCC for its retaliatory action of terminating Plaintiff for his protected activity.

19. Plaintiff engaged in protected activity by advising Baker that promoting Payne was and would be considered discrimination because he was being promoted due to his race, White, and not due to his qualifications.

20. Almost immediately after his protected activity as described in Paragraph 19, Defendant made the decision to terminate Plaintiff.

21. Plaintiff's protected activity was a motivating factor that prompted Defendant BSCC to take the adverse employment action. Defendant had no legitimate non-discriminatory reason for its conduct and its proffered reason is purely pretext.

22. Plaintiff suffered damages because of his termination, an adverse employment action, including lost wages, lost benefits, emotional distress, embarrassment, humiliation, and has incurred

expenses and costs as a result.

23. Defendant's actions were willful, with malice and with reckless disregard for Plaintiff's rights.

**B**.    **42 U.S.C. §§ 1981 THROUGH 1983**

24. Plaintiff re-alleges and repleads the above and incorporates by reference paragraphs 1 through 23 above with the same force and effect as if fully set out in specific detail herein below.

25. Plaintiff brings this action against Defendant Baker in his official capacity as Chancellor of the Alabama Community College System. At all times during the events recounted in this Complaint, Defendant was acting under color of state law.

26. Plaintiff had a federal statutory and Constitutional right to be free of retaliatory action for objecting to race discrimination. Defendant Baker's action in terminating Plaintiff deprived Plaintiff of those rights.

27. Plaintiff suffered damages because of Defendant's illegal actions and request prospective relief as his remedy including injunctive relief, attorney's fees, costs, and fees.

**VI.    PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

   a.   Grant the Plaintiff a declaratory judgment holding that the actions of the Defendants described herein violated and continue to violate the rights of Plaintiff as secured by Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §§ 1981 - 1983;

   b.   Grant the Plaintiff a permanent injunction enjoining Defendants, their agents, successors, employees, attorneys, and those acting in concert with the Defendants and

    on Defendants' behalf from continuing to violate Title VII and 42 U.S.C. 1981-1983.

c.  Issue an injunction ordering Defendant not to engage in discrimination or retaliation and any other act which violated Title VII.

d.  Grant the Plaintiff an order requiring Defendants to make Plaintiff whole by instating him to the position he would have occupied in the absence of the retaliation and discrimination, backpay, interest, front pay, compensatory damages, and/or nominal damages, injunctive relief.

e.  Plaintiff further prays for such other relief and benefits as the cause of justice may require including, but not limited to, an award of costs, attorney's fees, expenses, and any other damages or equitable relief to which he is or may be entitled as proven in trial.

Respectfully submitted,

/s/ Edward L. D. Smith

_____
EDWARD L. D. SMITH (SMITE0296)
Attorney for Plaintiff
Post Office Box 1643
Mobile, Alabama 36633-1643
251-431-9000
edward@edwardsmithlaw.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE BY A JURY.**

/s/ Edward L. D. Smith

_____
EDWARD L. D. SMITH